**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION**

| | |
|---|---|
| LUIS DANIEL ANDINO SALGADO,<br><br>Plaintiff,<br><br>v.<br><br>MIDLAND CREDIT MANAGEMENT, INC.,<br>AND RESURGENT CAPITAL SERVICES LP,<br><br>Defendants. | Case No.: 3:26-cv-917<br><br>***JURY TRIAL DEMANDED*** |

## COMPLAINT

Luis Daniel Andino Salgado ("Plaintiff") respectfully brings this case against Midland Credit Management, Inc. ("MCM") and Resurgent Capital Services LP ("Resurgent") (collectively, "Defendants") and states as follows:

## INTRODUCTION

1. This is an action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

## PARTIES

2. Plaintiff is a natural person residing in Ansonia, Connecticut, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

3. Defendant Midland Credit Management, Inc. ("MCM") is a furnisher of credit information that maintains its principal place of business at 350 Camino De La Reina, Suite 300, San Diego, California 92108.

4. MCM can be served through its registered agent, 1505 Corporation CSC - Lawyers Incorporating Service, located at 2710 Gateway Oaks Drive, Sacramento, CA 95833.

5.     Defendant Resurgent Capital Services LP ("Resurgent") is a furnisher of credit information that maintains a principal place of business located at 55 Beattie Place, Suite 110, Greenville, SC 29601.

6.     Resurgent can be served through its registered agent, Corporation Service Company, located at 100 Coastal Drive, Suite 210, Charleston, SC 29492.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p because there exists a federal question concerning the FCRA.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the events complained of occurred in this district.

## FACTUAL ALLEGATIONS

9.     On or about February 9, 2025, Plaintiff applied for a Capital One credit card.

10.     During the application process, he was informed that an account in his name already exists, despite having no knowledge of or involvement of such an account.

11.     Concerned, Plaintiff requested a copy of his credit reports from the non-party credit reporting agencies: Equifax, Trans Union, and Experian (collectively, the "CRAs").

12.     Upon review of his credit reports, Plaintiff was stunned to discover multiple accounts that he did not recognize, authorize, open, or benefit from.

13.     The CRAs each reported an account attributed to Defendant MCM with the following information (the "MCM Account"):

> Original Creditor: The Bank of Missouri;
> Account No.: ****9326;
> Date Opened: 03/26/2024;
> Status: Collection; and
> Balance: $1,186.00.

14. The CRAs each also reported an account attributed to Defendant Resurgent with the following information (the "Resurgent Account" and, together with the MCM Account, the "Disputed Fraudulent Accounts"):

> Original Creditor: Credit One Bank;
> Account No.: ****6561;
> Date Opened: 03/21/2024;
> Status: Collection; and
> Balance: $642.00.

15. Plaintiff did not apply for, authorize, consent to, or benefit from the Disputed Fraudulent Accounts.

16. Plaintiff's concern was particularly serious because the Disputed Fraudulent Accounts were opened at a time while Plaintiff was incarcerated, during which time he could not have opened the Disputed Fraudulent Accounts.

17. Plaintiff therefore could not have personally applied for, opened, authorized, used, or benefited from the Disputed Fraudulent Accounts.

18. The CRAs' credit reports also contained telephone numbers that Plaintiff had never used, recognized, or associated with himself, as well as credit inquiries from entities with whom Plaintiff had never applied for credit or otherwise initiated any transaction.

19. On or about February 21, 2025, Plaintiff filed an Identity Theft Report with the Federal Trade Commission ("FTC ID Theft Report"), identifying the Disputed Fraudulent Accounts and related information.

20. On or about April 15, 2025, Plaintiff contacted The Bank of Missouri regarding the account furnished by Defendant MCM.

21. Plaintiff attempted to speak with a Bank of Missouri representative regarding the Bank of Missouri account associated with Plaintiff's Social Security number.

22. The Bank of Missouri's automated system located an account using Plaintiff's Social Security number and stated that the account had been transferred to MCM.

23. The Bank of Missouri did not provide any information confirming that Plaintiff opened, authorized, used, or benefited from the account.

24. On or about April 15, 2025, Plaintiff also contacted Credit One Bank regarding the account being reported by Defendant Resurgent.

25. Plaintiff spoke with a Credit One Bank representative and inquired about the Credit One Bank account associated with Plaintiff's Social Security number.

26. The Credit One Bank representative located an account using Plaintiff's Social Security number but stated that Credit One Bank did not have information about the account.

27. The Credit One Bank representative instead provided Plaintiff with the telephone number for the collector, LVNV Funding LLC ("LVNV").

28. Plaintiff was shocked because he had never applied for, opened, authorized, used, or benefited from any Bank of Missouri or Credit One Bank account associated with the Disputed Fraudulent Accounts.

**Plaintiff's Dispute to the CRAs in February 2025**

29. On or about February 25, 2025, Plaintiff submitted written disputes and block requests to the CRAs, formally disputing the fraudulent accounts and identifying personal information that did not belong to him.

30. Plaintiff expressly stated that the disputed entries were not his and were the result of identity theft.

31. In support of his disputes, Plaintiff provided sufficient identifying information to locate his credit file, as well as a copy of his FTC ID Theft Report.

4

32. He also enclosed a list of the fraudulent accounts and addresses, and documentation establishing that the disputed information was inaccurate and did not pertain to him.

33. Plaintiff specifically requested that the CRAs block the reporting of all fraudulent and inaccurate accounts, unauthorized addresses, and personal information from his consumer reports.

34. On or about March 4, 2025, Equifax sent each Defendant an automated credit dispute verification ("ACDVs") in its reinvestigation of Plaintiff's dispute to Equifax.

35. Upon information and belief, each Defendant failed to adequately review all of the information provided to it by Plaintiff as required by the FCRA.

36. Defendants instead improperly verified the disputed information as accurate in response to Equifax's ACDV.

37. In fact, while many other furnishers told Equifax that the accounts they reported about Plaintiff were the result of identity theft, in contrast, Defendants verified the accounts as accurate despite inconsistencies in the account's information and Plaintiff's personal identifying information.

38. The Defendants did so despite these clear signs of identity theft.

39. Plaintiff's dispute made clear he never lived in Pennsylvania, yet Defendants verified the accounts despite the address discrepancy.

40. Further, the names on the accounts for each of the Fraudulent Disputed Accounts were also slightly different than Plaintiff's name, another tell-tale sign of identity theft.

41. Each Defendant violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the accounts were the product of identity theft.

**Plaintiff's Damages**

42.    Plaintiff did exactly what he should have done upon realizing he was the victim of identity theft; he filed the FTC ID Theft Report, disputed and requested that the CRAs block the Disputed Fraudulent Accounts, and provided all information reasonably necessary to support his disputes.

43.    Instead, Defendants disregarded Plaintiff's credible and substantiated disputes.

44.    Plaintiff reasonably believes that each Defendant failed to have its respective Disputed Fraudulent Account removed and continued to verify that account as accurate to the CRAs, inaccurately suggesting that Plaintiff was responsible for the account.

45.    Defendants are aware of the shortcomings of their respective procedures and intentionally choose not to comply with the FCRA to lower their costs.

46.    Accordingly, Defendants' violations of the FCRA are willful.

47.    As a result of Defendants' conduct, actions, and inactions, Plaintiff suffered damage by loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the Disputed Fraudulent Accounts that were the product of identity theft; and the expenditure of labor and effort disputing and trying to remove the Disputed Fraudulent Accounts that were the product of identity theft. Plaintiff was even prescribed medications for the physical manifestations of the symptoms he suffered as result of Defendants' FCRA violations.

48.    As a direct result of Defendants' continued reporting of inaccurate and fraudulent information, Plaintiff was denied a credit card by Capital One on or about April 9, 2025.

49.    The denial was based on information furnished by Defendants to CRAs.

50. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted, questioned, and disbelieved by Defendants.

**COUNT I**
**15 U.S.C. § 1681s-2(b)**
**Failure to Conduct a Reasonable Investigation**

51. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein.

52. Defendants refused to remove information that was apparently the product of identity theft.

53. Each Defendant violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute(s), or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to the CRAs; and by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to the CRAs.

54. Despite receiving notice through one or more CRAs that Plaintiff disputed the accounts as identity theft, and despite the disputes identifying which accounts did not belong to Plaintiff, each Defendant verified and/or continued furnishing its respective Disputed Fraudulent Account to one or more CRAs as belonging to Plaintiff, thereby misrepresenting Plaintiff and his creditworthiness by suggesting that Plaintiff was responsible for derogatory collection accounts he did not open, authorize, use, or benefit from, resulting in adverse action by prospective creditors.

55. Notably, Plaintiff was incarcerated when the Disputed Fraudulent Accounts were opened, such that it was impossible for him to have established those accounts.

56. Further, the address that Defendants verified was fraudulent and disputed.

57. Also, the names on the accounts were variations of Plaintiff's name, a sign of identity theft.

58. Still, each Defendant continued to furnish those derogatory accounts as belonging to Plaintiff despite receiving evidence that Plaintiff did not open those accounts.

59. As a result of Defendants' conduct, actions, and inactions, Plaintiff suffered damages as alleged herein.

60. Defendants' conduct, actions, and inactions were willful, rendering Defendants liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

61. Alternatively, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

62. Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter a judgment awarding Plaintiff actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs and awarding Plaintiff such other and further relief as the Court may deem appropriate and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby respectfully demands jury trial on all issues so triable.

Dated: Flushing, New York
   June 8, 2026        Respectfully submitted,

            **CONSUMER ATTORNEYS PLLC**

            */s/ Emanuel Kataev, Esq.*
            Emanuel Kataev, Esq.
            6829 Main Street
            Flushing, NY 11367-1305
            (718) 412-2421 (office)
            (718) 489-4155 (facsimile)
            ekataev@consumerattorneys.com

            *Attorneys for Plaintiff*
            *Luis Daniel Andino Salgado*